**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:15-CR-3** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **ANTHONY F. D'AMBROSIO (2),** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

In December 2017, a jury convicted defendant Anthony F. D'Ambrosio ("D'Ambrosio") of six offenses involving prostitution, sex trafficking of minors, distribution of controlled substances, and related conspiracies. D'Ambrosio moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, a new trial under Rule 33, and arrest of judgment under Rule 34. (See generally Docs. 477, 595, 604).

I. **Factual Background and Procedural History**

In January 2015, a federal grand jury returned a three-count indictment charging Albert Martinez ("Albert")[1] with sex trafficking of minors and interstate prostitution. By way of a superseding indictment returned two months later, the grand jury added five codefendants and four additional counts. The superseding indictment charges D'Ambrosio in all seven counts: sex trafficking of minors, 18 U.S.C. § 1591(a) (Count 1); transportation of an individual to engage in prostitution,

---

[1] We refer to several defendants by their first names for clarity purposes only, as there are two defendants in this case with the last name "Delgado" and two defendants with the last name "Martinez."

18 U.S.C. § 2421(a) (Count 2); transportation of a minor to engage in prostitution, 18 U.S.C. § 2423(a) (Count 3); conspiracy to transport an individual to engage in prostitution in violation of Section 2421, 18 U.S.C. § 371 (Count 4); conspiracy to transport a minor to engage in prostitution in violation of Section 2423(a), 18 U.S.C. § 2423(e) (Count 5); conspiracy to distribute and possess with intent to distribute oxycodone (Percocet), cocaine, heroin, and marijuana, 21 U.S.C. § 846 (Count 6); and distribution and possession with intent to distribute oxycodone, 21 U.S.C. § 841(a)(1) (Count 7). Counts 1, 2, 3, and 7 include aiding and abetting charges under 18 U.S.C. § 2(a).

Prior to trial, two defendants pled guilty. One of those defendants was Albert, the admitted leader of the prostitution organization, who later testified at trial for the government. D'Ambrosio, along with codefendants Antonio Delgado ("Antonio"), Armando Delgado ("Armando"), and Keanu Martinez ("Keanu") chose to go to trial. A jury trial commenced on December 5, 2017. After jury selection but before the start of the government's case in chief, Keanu entered into a plea agreement and pled guilty to Count 3. Keanu, like his father Albert, also testified at trial for the government. Following Keanu's guilty plea, trial proceeded against D'Ambrosio, Armando, and Antonio.

At the close of the government's case, all three defendants moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The court granted D'Ambrosio's and Armando's Rule 29 motions in part, entering judgment of acquittal on Count 3 of the superseding indictment. The court granted Antonio's Rule 29 motion in full, dismissing all charges against him because the evidence

showed that he was a juvenile at the time of the alleged acts and conspiracies.  The court permitted the remaining charges—Counts 1, 2, 4, 5, 6, and 7—against D'Ambrosio and Armando to go to the jury.  The jury convicted both D'Ambrosio and Armando on all six counts.

Following their convictions, D'Ambrosio and Armando renewed their motions for judgment of acquittal and moved for a new trial pursuant to Federal Rule of Criminal Procedure 33.  Armando was acquitted on Count 5 due to insufficient evidence, and his conviction on Count 1 was reversed because the superseding indictment had been constructively amended by the jury instructions.  The government decided not to retry Armando on Count 1.  While Armando's post-trial motions were being litigated, D'Ambrosio obtained new counsel, who filed two additional rounds of post-trial motions.  In total, D'Ambrosio asserts eight grounds for relief.  The motions are fully briefed and ripe for disposition.

## II.   <u>Legal Standards</u>

### A.    **Rule 29 Motion for Judgment of Acquittal**

On motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial.  <u>United States v. Caraballo-Rodriguez</u>, 726 F.3d 418, 431 (3d Cir. 2013) (*en banc*) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)); <u>see</u> <u>also</u> <u>United States v. Freeman</u>, 763 F.3d 322, 343 (3d Cir. 2014).  The court must view the evidence in a light most favorable to the prosecution and must deny the motion "if there is substantial evidence . . . to uphold the jury's decision."

Caraballo-Rodriguez, 726 F.3d at 430 (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)).  Under this highly deferential standard of review, it is not the court's task to "act as the thirteenth juror," weigh credibility, assign weight to evidence, or "substitute [its] judgment for that of the jury."  Id. (citations omitted).  The decision to overturn a conviction based on insufficient evidence may only be made "where the prosecution's failure is clear," United States v. Leon, 739 F.2d 885, 890 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), or where the verdict "fall[s] below the threshold of bare rationality," Caraballo-Rodriguez, 726 F.3d at 431.

### B.     Rule 33 Motion for a New Trial

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  Granting or denying a motion for a new trial "lies within the discretion of the district court."  United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006).  A court evaluating a Rule 33 motion does not view the evidence in a light favorable to the government but instead must "exercise[] its own judgment in assessing the Government's case."  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (citation omitted).  Rule 33 motions are disfavored and should be "granted sparingly and only in exceptional cases."  United States v. Silveus, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)).  Exceptional cases include those in which trial errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial."  United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993) (citation omitted).

**III.** **Discussion**

D'Ambrosio argues that the evidence adduced at trial is insufficient to sustain his convictions on Counts 1 and 5. Alternatively, he maintains that—like his codefendant Armando—he is entitled to reversal of conviction on Count 1 because the government constructively amended the superseding indictment. He also presents a bevy of Rule 33 claims seeking a new trial. Finally, he moves to arrest judgment on Counts 2 and 5, asserting that the superseding indictment is fatally defective as to those counts. We will address these claims *seriatim*.

**A.** **Sufficiency of the Evidence**

D'Ambrosio's sufficiency claims are straightforward. He argues that the government proffered insufficient evidence to prove the two convictions involving minors—sex trafficking of a minor (Count 1) and conspiracy to transport a minor to engage in prostitution (Count 5).

**1.** ***Count 1 – Sex Trafficking of Minors, 18 U.S.C. § 1591(a)***

D'Ambrosio contends that there was no evidence at trial establishing that he "recruited, enticed, harbored, or transported any minor to engage in a commercial sex act" or that he benefitted financially from such an action. (Doc. 478 at 2). We disagree.

Minor victim A.B. testified extensively about working with both Albert and D'Ambrosio in Harrisburg, Pennsylvania, on her first night as part of the prostitution organization. A.B. attested that she worked with D'Ambrosio that night and that D'Ambrosio drove her. (12/11/17 Trial Tr. 74:7-8, 10-15, 80:20-25, 91:12-15). She explained that D'Ambrosio informed her and several other victims

about "everything" involved with the prostitution process, going "over e-mails, phones, [and] text mail ap[p]s." (Id. at 74:12-14). A.B. specifically confirmed that, during this first night, she met with paying customers and worked as a prostitute. (Id. at 111:24-112:4).

A.B.'s grand jury testimony likewise reveals that she worked with D'Ambrosio and paid him a percentage of her prostitution proceeds.[2] During trial A.B. repeatedly denied working with D'Ambrosio other than on the first night and disavowed any payment arrangement with him. (Id. at 75:22-24, 76:17-19, 77:9-13, 23-24, 78:21-79:1, 88:4-7, 91:12-24). However, A.B. conceded that before the grand jury she had testified that D'Ambrosio drove her and that she had a "fifty-fifty" fee-splitting arrangement with him. (Id. at 76:20-80:13). This grand jury testimony is bolstered by Albert's trial testimony, during which he explained that D'Ambrosio was one of only two people he permitted to drive A.B. to appointments. (12/6/17 Trial Tr. 86:22-87:12). In view of the foregoing testimony, we have little difficulty finding that sufficient evidence supports the jury's determination that D'Ambrosio "transport[ed]" a minor for prostitution or benefitted financially therefrom. See 18 U.S.C. § 1591(a) (2012).

D'Ambrosio does not explicitly challenge the *mens rea* component of Count 1 regarding the minor victim's age, but he does cite to certain evidence tending to

---

[2] Because A.B. testified at trial and was subject to cross-examination, her prior inconsistent statements given under oath to the grand jury are not hearsay and could be considered as substantive evidence by the petit jury. See FED. R. EVID. 801(d)(1)(A) & advisory committee's note to 1974 enactment of subdivision (d)(1)(A); Tome v. United States, 513 U.S. 150, 157 (1995) (citations omitted).

show that he was unaware that A.B. was 17 years old. We are satisfied that, although the record evidence is far from overwhelming, sufficient evidence exists to establish that D'Ambrosio committed the above-mentioned acts "knowing" that A.B. was a minor or "in reckless disregard" of that fact. See id.; (Doc. 23 at 1-2). In particular, the jury heard evidence of recorded telephone calls D'Ambrosio made only a few days after his arrest on the superseding indictment and prior to the government disclosing any discovery materials. (See 12/12/17 Trial Tr. 15:10-13, 32:8-14, 43:2-14). Notably, the superseding indictment identifies the minor victims only as "Minor [A, B, C, or D]." (See Doc. 23 at 7-9). In D'Ambrosio's phone calls, however, he frequently refers to A.B. by her first and last name and indicates that she may be—in the government's parlance—"the biggest threat to him" regarding his pending criminal charges. (See 12/12/17 Trial Tr. 46:13-47:11, 49:17-25; Doc. 617 at 9). D'Ambrosio repeatedly asks the person on the other end of the line to research A.B. and confirm her date of birth. (Id. at 46:14-16, 47:5-10, 49:17-25).

D'Ambrosio's statements in these recorded calls could be viewed in two ways. On one hand, the fact that D'Ambrosio suspected that A.B. was one of the minors referenced in the superseding indictment could imply that he either knew A.B. was a minor at the time or recklessly disregarded that fact. On the other hand, a reasonable juror could infer that D'Ambrosio's requests to research A.B. and find out her date of birth meant that D'Ambrosio initially thought A.B. was an adult and was surprised to learn she was a minor. When viewing the evidence in a light most favorable to the government, see Caraballo-Rodriguez, 726 F.3d at 430, we conclude

that there is sufficient evidence to support the age-related *mens rea* for Count 1.

Consequently, D'Ambrosio's Rule 29 challenge to this count fails.

      **2.**      ***Count 5 – Conspiracy to Transport a Minor to Engage in Prostitution in Violation of Section 2423(a), 18 U.S.C. § 2423(e)***

D'Ambrosio was found guilty of participating in three separate conspiracies: conspiracy to transport an individual to engage in prostitution (Count 4), conspiracy to transport a minor to engage in prostitution (Count 5), and conspiracy to distribute and possess with intent to distribute various controlled substances (Count 6).  Each of these conspiracies has a unique objective but otherwise consists of the same basic elements: (1) that two or more persons agreed to commit an offense; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined the agreement or conspiracy knowing of its unlawful objective and intending to join together with at least one other alleged conspirator to achieve that objective.  See THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTIONS §§ 6.18.371A, 6.21.846B.[3]

D'Ambrosio challenges the sufficiency of the evidence on Count 5, which charges conspiracy under 18 U.S.C. § 2423(e) to knowingly transport a minor in interstate commerce to engage in prostitution in violation of Section 2423(a).  (See Doc. 23 at 10).  Unlike Section 1591, a conviction under Section 2423 specifically requires transportation of a minor across state lines.  See 18 U.S.C. § 2423(a);

---

[3] Count 4 is the only conspiracy charge that requires a fourth element—that an "overt act" was performed by a member of the conspiracy during its existence and to further its objectives.  See id. §§ 6.18.371A, 6.18.371F.

United States v. Broxmeyer, 616 F.3d 120, 128 (2d Cir. 2010). At trial, the court granted D'Ambrosio's Rule 29 challenge to Count 3—the underlying substantive offense—due to insufficient evidence. (See 12/13/17 Trial Tr. 142:24-25). D'Ambrosio contends that the related conspiracy conviction cannot stand because there is no evidence that he was a member of this particular conspiracy or intended its objective.

The government cites to no evidence to support Count 5 and, in fact, does not address the sufficiency challenge to this conviction at all. (See Doc. 499 at 14-17; Doc. 617 at 37-39). After our own exhaustive review of the record, we are unable to identify *any* evidence showing that D'Ambrosio was a member of the conspiracy to transport a minor across state lines for prostitution or even knew of the existence of this conspiracy. As explained above, the only evidence adduced at trial connecting D'Ambrosio to a minor pertains exclusively to A.B. There is no evidence that D'Ambrosio's illegal involvement with A.B. transpired outside of Pennsylvania or that he agreed or intended that A.B. be transported across state lines for prostitution. Accordingly, we will grant D'Ambrosio's Rule 29 motion as to Count 5 because "the prosecution's failure is clear." Leon, 739 F.2d at 890.[4]

---

[4] The Double Jeopardy Clause of the Fifth Amendment bars a new trial when the evidence at the initial trial is insufficient to sustain a guilty verdict thereby requiring an acquittal. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Burks, 437 U.S. at 11; see also McMullen v. Tennis, 562 F.3d 231, 237 (3d Cir. 2009).

**B.      Constructive Amendment**

When reviewing Armando's sufficiency challenge to Count 1 of the superseding indictment, this court determined that Armando's conviction on that count required reversal due to constructive amendment of the indictment. <u>See</u> <u>United States v. Delgado</u>, 367 F. Supp. 3d 286, 292-94 (M.D. Pa. 2019) (Conner, C.J.). Specifically, we found that although the superseding indictment charged that the defendants trafficked a minor *"knowing and in reckless disregard of the fact* that this individual had not attained the age of 18 years," the jury had also been instructed under subsection (c) of Section 1591, which imposes strict liability for any defendant who "had a reasonable opportunity to observe" the minor victim. <u>Id.</u> (quoting (Doc. 23 at 1-2 (emphasis added)); 18 U.S.C. § 1591(c)). We reversed Armando's conviction because the amended indictment impermissibly transformed the charged offense from "one requiring a specific mens rea into a strict liability offense." <u>Id.</u> at 293 (quoting <u>United States v. Lockhart</u>, 844 F.3d 501, 515-16 (5th Cir. 2016)). D'Ambrosio argues that this holding should apply with equal force to his case. The government counters that the facts in D'Ambrosio's case are different and therefore reversal is not warranted.

Constructive amendment occurs "when evidence, arguments, or the district court's jury instructions effectively amend[] the indictment by broadening the possible bases for conviction from that which appeared in the indictment." <u>United States v. Centeno</u>, 793 F.3d 378, 390 (3d Cir. 2015) (quoting <u>United States v. McKee</u>, 506 F.3d 225, 229 (3d Cir. 2007)). Constructive amendment of an indictment violates a criminal defendant's "basic right" of the Fifth Amendment's grand jury

guarantee. <u>McKee</u>, 506 F.3d at 229. In this circuit, when an objection has not been raised during trial and therefore plain error review is implicated, constructive amendment is not *per se* reversible but instead creates a rebuttable presumption of prejudice. <u>Id.</u> at 229 & n.3.

We will not repeat the detailed analysis concerning how the superseding indictment was constructively amended. <u>See</u> <u>Delgado</u>, 367 F. Supp. 3d at 292-93. We simply note that D'Ambosio and Armando were tried together and the same superseding indictment and jury instructions are at issue. To avoid reversal of D'Ambrosio's conviction on Count 1, the government must rebut the presumption of prejudice by establishing "with certainty" that the jury did not convict D'Ambrosio based on the improperly broadened jury instructions. <u>See</u> <u>McKee</u>, 506 F.3d at 231.

We find that the government is unable to carry its burden. There assuredly is evidence that D'Ambrosio had contact with A.B. and thus had "a reasonable opportunity to observe" her. 18 U.S.C. § 1591(c) (2012). But the government has failed to identify any evidence that would show "with certainty" that the jury convicted D'Ambrosio on Count 1 because he knew or recklessly disregarded A.B.'s minority status rather than because he had the opportunity to observe her.[5] Consequently, the conviction on Count 1 must be reversed. <u>See</u> <u>id.</u> at 231-32

---

[5] By contrast, there is evidence demonstrating that Albert and Keanu personally knew some of the minor victims for many years or had been involved in situations where the minors could not rent hotel rooms due to their underage status. This type of evidence could establish a "knowing" or "reckless disregard" *mens rea*. None of this evidence, however, was connected to D'Ambrosio.

(citations omitted).  Retrial on Count 1 is permissible because the record evidence is sufficient to establish the elements of an offense under 18 U.S.C. § 1591.  See id. at 232; Section III(A)(1), *supra*.

### C. Rule 33 Motions for a New Trial

D'Ambrosio seeks a new trial on numerous grounds.  He alleges that the government failed to turn over pertinent discovery material under the Jencks Act, 18 U.S.C. § 3500; Federal Rule of Criminal Procedure 16; Brady v. Maryland, 373 U.S. 83 (1963); and Giglio v. United States, 405 U.S. 150 (1972).  He also contends that the prosecution made an improper emotional appeal to the jury at closing.  Lastly, he argues that a conflict of interest and ineffective assistance of counsel warrant a new trial.[6]

#### 1. *Alleged Discovery Violations*

D'Ambrosio, like Armando, claims that the United States committed numerous discovery violations.  These purported transgressions include failing to provide the defense with one of Albert's cell phones, which was confiscated from him while he was incarcerated and awaiting trial on the instant charges; failing to fully disclose government-witness cooperation agreements and details; and failing to disclose potentially exculpatory documents and interview notes.  (See Doc. 478 at 7-9).

---

[6] D'Ambrosio's initial Rule 33 motion also challenges the weight of the evidence as to Counts 1 and 5.  In light of our determinations regarding constructive amendment of Count 1 and insufficient evidence for Count 5, we need not discuss this weight-of-the-evidence claim.

Under the Jencks Act, "any time that a government witness testifies on direct examination, the defendant is entitled to a copy of 'any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.'" United States v. Maury, 695 F.3d 227, 247 (3d Cir. 2012) (alteration in original) (quoting 18 U.S.C. § 3500(b)(2)). The Act endeavors to provide a defendant the opportunity to review witness statements for impeachment evidence. Id. at 248 (citation omitted). Jencks Act violations are reviewed under a harmless error standard. United States v. Hill, 976 F.2d 132, 141 (3d Cir. 1992).

Pursuant to Brady v. Maryland, due process requires the government to turn over evidence "favorable to the accused" when such evidence is "material either to guilt or to punishment." Brady, 373 U.S. at 87. Evidence is "material" if there is a reasonable probability that, but for the prosecution's failure to disclose the information, "the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). A defendant can demonstrate a "reasonable probability" of a different result if the government's suppression of evidence "undermines confidence in the outcome of the trial." Id. (quoting Bagley, 473 U.S. at 678).

Finally, under Giglio, material evidence affecting a witness's credibility must be disclosed when that witness's "reliability . . . may well be determinative of guilt or innocence." Giglio, 405 U.S. at 154 (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)). Giglio compels a new trial only if the witness's false testimony could "in any reasonable likelihood have affected the judgment of the jury." Id. (quoting Napue, 360 U.S. at 271).

One commonality between <u>Brady</u>, <u>Giglio</u>, and the Jencks Act is that a violation does not automatically entitle a defendant to relief. The defendant must demonstrate some reasonable probability or likelihood of prejudice. Just like Armando, D'Ambrosio's claims fall short in this regard. Nowhere in his motion or briefing does D'Ambrosio establish—beyond pure speculation—how any of the alleged discovery violations affected or reasonably could have affected the outcome of his trial.

D'Ambrosio's briefing includes the following vague or conclusory statements: the confiscated, undisclosed cell phone "is exculpatory" because Albert "used this phone to contact witnesses and coordinate stories in order to implicate Mr. D'Ambrosio"; certain records "*may* constitute <u>Giglio</u> material *if* the notes reflect promises or benefits conferred upon" government witnesses in exchange for testimony; hotel records "are exculpatory for reflecting specific dates of prostitution activity (to which D'Ambrosio *could attempt to establish* an alibi)"; "[i]t is *highly likely*" that the notes from Keanu's proffer interview contain impeachment material. (Doc. 478 at 7-8 (emphasis added)). None of these assertions comes close to identifying a specific discovery violation that could have had a prejudicial effect on D'Ambrosio's trial. Such speculative and unsupported claims are clearly insufficient to warrant the extraordinary relief of a new trial. Even assuming his claims are true and the government's actions contravene <u>Brady</u>, <u>Giglio</u>, or the Jencks Act, D'Ambrosio has failed to establish prejudice or the reasonable likelihood thereof. We will deny D'Ambrosio's motion for new trial on this ground.

## 2.    *Alleged Prosecutorial Misconduct During Trial*

D'Ambrosio asserts that the prosecutor made an improper emotional appeal to the jury during closing.  He alleges that Assistant United States Attorney Meredith Taylor ("AUSA Taylor") began "crying" when discussing the purported impact of the offenses on the victims.  (Doc. 478 at 9, 10).  AUSA Taylor emphatically denies that any emotional outburst occurred.

A defendant claiming prosecutorial misconduct during closing arguments must establish that the government's statements or conduct caused him "substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."  United States v. Brown, 765 F.3d 278, 296 (3d Cir. 2014) (citation omitted).  The court must follow a two-step process, first determining whether the comments were improper and, if they were, applying a harmless error analysis that asks whether it is "highly probable that the error did not contribute to the judgment."  Id. (quoting United States v. Mastrangelo, 172 F.3d 288, 297 (3d Cir. 1999)).  A "high probability" is one that permits the court to possess a "sure conviction" that the error did not unfairly prejudice the defendant.  United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995) (*en banc*).

D'Ambrosio's misconduct contention is without merit.  To be sure, the court did not witness AUSA Taylor crying or becoming overly emotional during her closing.  We further observe that neither defendant objected or sought a sidebar conference to raise this purported issue.  A defendant cannot prevail on a motion for a new trial by merely alleging an unfair emotional appeal by the government without objecting at trial or proffering any corroborating evidence.  We will

therefore deny D'Ambrosio's Rule 33 motion as it relates to the government's closing.

### 3. *Alleged Conflict of Interest*

On the second day of trial, then-counsel for D'Ambrosio, John A. Abom, Esquire ("Attorney Abom"), had an out-of-court discussion with Albert in the presence of his attorney. (See 12/6/17 Trial Tr. 94:8-15). This conversation occurred during a lunch recess in the middle of the government's direct examination of Albert. (Id. at 92:3-15, 94:25-95:4). After learning of the conversation, the court sequestered and separately questioned Attorney Abom, Albert, and Albert's attorney regarding the topics and details of the discussion. (Id. at 95:8-112:3). Upon hearing from the individuals involved and from counsel for all parties, the court determined that Attorney Abom would not be a witness, there were no conflict-of-interest concerns, and no party would be unfairly prejudiced if the trial moved forward. (Id. at 114:16-116:4).

D'Ambrosio maintains that the off-the-record conversation turned Attorney Abom into a potential witness. D'Ambrosio reasons that because he never waived this conflict, his Sixth Amendment right to representation by conflict-free counsel was violated. Specifically, D'Ambrosio claims that Albert was not able to be cross-examined about the potential reduced sentence of 10 to 15 years Albert expected as a result of his cooperation or about exculpatory statements Albert made concerning D'Ambrosio's lack of involvement in the recruitment of prostitution victims.

The primary basis for Attorney Abom's alleged conflict is the American Bar Association's Model Rule of Professional Conduct 3.7(a). This rule provides, in

relevant part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[.]" MODEL RULES OF PROF'L CONDUCT r.3.7(a) (AM. BAR ASS'N 2019). We remain unconvinced that Attorney Abom's out-of-court conversation with Albert turned Attorney Abom into a potential witness, restricted cross-examination of Albert, or prejudiced D'Ambrosio in any way. As evidenced by the trial testimony, Albert was thoroughly cross-examined about his potential sentencing guidelines, his cooperation with the government, and the benefits he expected or hoped his cooperation would produce. (See 12/7/17 Trial Tr. 101:21-105:3, 114:17-118:7, 129:13-130:4). Albert openly admitted that he was testifying to get a more favorable sentence, (id. at 102:23-25), detailed his relevant sentencing factors and Guidelines range of 30 years to life, (id. at 115:1-25), and discussed the possibility of receiving a motion for a downward departure under U.S.S.G. § 5K1.1 in return for cooperating, (id. at 116:1-117:14).

We likewise reject D'Ambrosio's claim of prejudice from allegedly being unable to question Albert about the portion of the conversation regarding D'Ambrosio's lack of involvement with "recruiting" prostitution victims. Even if D'Ambrosio was not involved with recruitment of victims, other record evidence clearly established his transportation of them. As for the less salient topics of the out-of-court conversation mentioned in D'Ambrosio's motion and briefing, (see Doc. 595 ¶ 36; Doc. 596 at 10-11), D'Ambrosio has failed to establish how these ancillary issues would have had any appreciable effect on the outcome of his trial. Accordingly, Attorney Abom was not a necessary witness due to this mid-testimony conversation, so his continued representation of D'Ambrosio created no conflict of

interest.  And because there was no conflict or potential conflict under Rule 3.7(a),

there was nothing for D'Ambrosio to waive and no Sixth Amendment violation.

### 4. *Ineffective Assistance of Counsel*

D'Ambrosio claims a new trial is required because Attorney Abom provided

ineffective assistance of counsel in contravention of the Sixth Amendment to the

United States Constitution.  A claim of ineffective assistance is governed by the

familiar two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).

To prevail on such a claim, a defendant must demonstrate that (1) counsel's

representation fell below an objective level of reasonableness based on prevailing

professional norms, and (2) the deficient representation was prejudicial.  See id. at

687-88.  The defendant bears the burden of proving both prongs.  See id. at 687.

Ineffective assistance of counsel claims can be raised in a Rule 33 motion for a new

trial.  See United States v. Chronic, 466 U.S. 648, 667 n.42 (1984); United States

v. Brown, 623 F.3d 104, 113-14 & n.5 (2d Cir. 2010).[7]

D'Ambrosio asserts two claims of ineffective assistance: *first*, that Attorney

Abom precluded D'Ambrosio from testifying on his own behalf by failing to call

D'Ambrosio as a witness; and *second*, that Attorney Abom failed to call other critical

witnesses to testify on D'Ambrosio's behalf.  A timely Rule 33 motion, which is not

based on "newly discovered evidence," is the appropriate vehicle to raise these

---

[7] But see United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993) (finding
that "newly discovered evidence" motion under Rule 33(b)(1) "is at best a poorly
suited vehicle for advancing an ineffective assistance of counsel claim" because
Strickland standard and newly discovered evidence standard conflict).

ineffectiveness claims at this juncture, particularly because D'Ambrosio's original trial counsel has been replaced. See Brown, 623 F.3d at 113-14 & n.5. Nevertheless, we cannot assess the merits of D'Ambrosio's claims on the current record. His allegations necessitate a response from Attorney Abom. Consequently, we will defer ruling on these Rule 33 claims until we hold an evidentiary hearing.

### D.      Rule 34 Motion for Arrest of Judgment

D'Ambrosio's final post-trial claim attacks the sufficiency of the superseding indictment. Specifically, he posits that Counts 2 and 5 are deficient because they charge that D'Ambrosio transported victims "with the intent that such individual[s] engage in prostitution and *sexual activity for which any person can be charged with a criminal offense*." (See Doc. 23 at 3, 10 (emphasis added)). This language tracks Sections 2421 and 2423, which both criminalize transportation of a victim "with intent that [such] individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense[.]" 18 U.S.C. §§ 2421(a), 2423(a) (2012). According to D'Ambrosio, the government's failure to specify the other intended illegal "sexual activity" renders Counts 2 and 5 fatally defective due to inadequate notice of the crimes charged. D'Ambrosio moves to arrest judgment under Federal Rule of Criminal Procedure 34 based on this purported defect.

At the outset, we note that the current iteration of Rule 34 is limited to jurisdictional challenges. See FED. R. CRIM. P. 34(a) & advisory committee's note to 2014 amendment. D'Ambrosio's claim instead appears to implicate Rule 12(b)(3)(B)(iii), which concerns allegations of "a defect in the indictment" due to "lack of specificity." See FED. R. CRIM. P. 12(b)(3)(B)(iii). In United States v. Cotton,

535 U.S. 625 (2002), the Supreme Court explicitly held that indictment defects are not jurisdictional. Cotton, 535 U.S. at 629-31 (overruling *Ex parte* Bain, 121 U.S. 1 (1887), "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction"). D'Ambrosio attacks the specificity of Counts 2 and 5 and therefore his claim—which does not implicate this court's jurisdiction—should have been "raised by pretrial motion" under Rule 12. See FED. R. CRIM. P. 12(b)(3). Nevertheless, to preempt a future challenge to the sufficiency of the indictment bootstrapped to a claim of ineffective assistance, we will explain why D'Ambrosio's contention is meritless.

Had the government charged D'Ambrosio only with transporting a victim with the intent that the victim engage in "sexual activity for which a person can be charged with a criminal offense," or had it pursued a conviction on such grounds at trial in the alternative to prostitution, his argument may have merit. See, e.g., United States v. Mannava, 565 F.3d 412, 414-15 (7th Cir. 2009) (discussing identically worded Section 2422, request for bill of particulars to clarify underlying illegal conduct, and necessity of unanimous jury finding of intended underlying illegal act); United States v. Thompson, 141 F. Supp. 3d 188, 195-98 (E.D.N.Y. 2015) (dismissing as deficient parts of indictment that failed to specify intended illegal "sexual activity" under Sections 2421, 2422, and 2423 but upholding related portions charging underlying prostitution offenses); 1 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 124 (4th ed. 2014).

But that is not what happened in D'Ambrosio's case. Throughout trial, the government maintained its theory that D'Ambrosio and his codefendants were

transporting victims with the intent that those victims engage in prostitution. Moreover, the court instructed the jury that the offenses at issue were "transportation of an individual to engage in prostitution," (12/15/17 Trial Tr. 153:20-23), and "conspiracy to transport a minor to engage in prostitution," (id. at 161:12-18). The court specifically defined "prostitution," (id. at 154:19-21), and was careful to include *only* prostitution as the intended objective when reviewing the elements of Counts 2 and 5, (see id. at 153:23-154:18, 161:19-162:19). At no time did the government pursue a conviction based on any other illegal sexual activity, nor was the jury so instructed.

It is well settled that so long as "the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the [Fifth Amendment] right to a grand jury is normally not violated by the fact that the indictment alleges . . . other means of committing the same crime." United States v. Miller, 471 U.S. 130, 136 (1985); United States v. Tykarsky, 446 F.3d 458, 474 (3d Cir. 2006). Those other averments generally can be treated as mere "surplusage" and therefore disregarded. Miller, 471 U.S. at 136-37.

In the case *sub judice*, the jury rendered an unambiguous verdict on Counts 2 and 5, unanimously finding that D'Ambrosio transported, and conspired to transport, victims intending that the victims engage in prostitution. That conduct was "fully and clearly" charged in the superseding indictment and properly presented in the jury instructions. The indictment's additional language concerning other illegal sexual activity—even if insufficiently alleged—can be disregarded as "a useless averment." See id. at 136 (quoting Ford v. United States,

273 U.S. 593, 602 (1927)).  We will therefore deny D'Ambrosio's Rule 34 motion to arrest judgment.

**IV.**   **Conclusion**

We will grant in part and deny in part D'Ambrosio's various post-trial motions (Docs. 477, 595, 604) as more thoroughly discussed in this memorandum. An appropriate order shall issue.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       August 12, 2019