IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:15-CR-3 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **ANTHONY F. D'AMBROSIO (2),** | : |
| | : |
| **Defendant** | : |

**MEMORANDUM**

Defendant Anthony F. D'Ambrosio moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Docs. 716, 724). He asks the court to reduce his sentence to time served based on his concern regarding spread of the COVID-19 virus[1] at the low-security Federal Correctional Institution at Allenwood, Pennsylvania ("FCI Allenwood Low"), where he is currently incarcerated, as well as his teenage son's medical condition. The government opposes compassionate release. For the following reasons, we will deny D'Ambrosio's motion.

**I.    Factual Background & Procedural History**

In January 2015, a federal grand jury returned a three-count indictment charging Albert Martinez with sex trafficking of minors and interstate prostitution. By way of a superseding indictment returned two months later, the grand jury

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it,* WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

added five codefendants—including D'Ambrosio—and four additional counts. (Doc. 23). The superseding indictment charged D'Ambrosio in all seven counts: sex trafficking of minors, 18 U.S.C. § 1591(a) (Count 1); transportation of an individual to engage in prostitution, 18 U.S.C. § 2421(a) (Count 2); transportation of a minor to engage in prostitution, 18 U.S.C. § 2423(a) (Count 3); conspiracy to transport an individual to engage in prostitution in violation of Section 2421, 18 U.S.C. § 371 (Count 4); conspiracy to transport a minor to engage in prostitution in violation of Section 2423(a), 18 U.S.C. § 2423(e) (Count 5); conspiracy to distribute and possess with intent to distribute oxycodone (Percocet), cocaine, heroin, and marijuana, 21 U.S.C. § 846 (Count 6); and distribution and possession with intent to distribute oxycodone, 21 U.S.C. § 841(a)(1) (Count 7). (Id.)

Several defendants pled guilty, and the case proceeded to trial against D'Ambrosio and two codefendants. At the close of the government's case in chief, D'Ambrosio moved for judgment of acquittal. The court granted D'Ambrosio's Rule 29 motion in part, entering judgment of acquittal on Count 3 of the superseding indictment. The court permitted the remaining charges—Counts 1, 2, 4, 5, 6, and 7—against D'Ambrosio and a remaining codefendant to go to the jury. The jury convicted both defendants on all six counts. (Doc. 425).

Following his convictions, D'Ambrosio renewed his motion for judgment of acquittal and moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. (Docs. 477, 595, 604). The court granted his post-trial Rule 29 motion on Count 5 due to insufficient evidence, and his conviction on Count 1 was reversed because the superseding indictment had been constructively amended by the jury

instructions. (See Doc. 650). The government immediately notified the court of its intent to retry Count 1. (Doc. 655).

Retrial on Count 1 was delayed because D'Ambrosio's unresolved post-trial motions required an evidentiary hearing. During this process, D'Ambrosio and the government reached a binding sentencing agreement. (See Doc. 711). The agreement stipulated that D'Ambrosio would serve a 120-month sentence for his convictions on Counts 2, 4, 6, and 7; he would withdraw his unresolved post-trial motions; he would not appeal his convictions or sentence; and the government would dismiss Count 1 instead of seeking retrial. (See id.) In February of this year, the court accepted the agreement and sentenced D'Ambrosio to 120 months' imprisonment on his counts of conviction. (Doc. 714). D'Ambrosio is currently serving his federal sentence at FCI Allenwood Low, with a projected release date of March 21, 2026. See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "72543-067") (last visited July 20, 2020).

On April 20, 2020, D'Ambrosio filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (See Doc. 716). That same day, we appointed counsel to determine whether D'Ambrosio may be eligible for relief and, if so, to file any appropriate motion or briefing on his behalf. (Doc. 717). On May 13, D'Ambrosio petitioned the warden to move for compassionate release on his behalf. (Doc. 734). In his request, D'Ambrosio focused on his 13-year-old son's neurological condition and need for care. (Id.) The warden denied this request five days later. (Doc. 734-2). D'Ambrosio filed a counseled compassionate release motion with this

3

court on June 22. (Doc. 724). The government filed an expedited response three days later, (Doc. 730), and D'Ambrosio filed a counseled reply on July 2, (Doc. 735). D'Ambrosio's motion for compassionate release is now ripe for review.

## II. Discussion

D'Ambrosio asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A). See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion. Id. Neither D'Ambrosio nor the government indicates whether he has appealed the warden's May 18 denial of his request to seek compassionate release. The government notes that D'Ambrosio never raised his own medical problems to the warden as a reason for compassionate release, and thus that portion of his claim is unexhausted and cannot be considered by the court. (See Doc. 730 at 15-17 (collecting cases)). Regardless of whether D'Ambrosio has

4

exhausted his administrative remedies, we conclude that he is not entitled to compassionate release.[2]

### A.     Extraordinary and Compelling Reasons

D'Ambrosio asserts two reasons for early release: (1) his potential exposure to and elevated risk from the COVID-19 virus while incarcerated and (2) his son's medical condition. Although we are sympathetic to D'Ambrosio's concerns, we do not believe compassionate release is appropriate in this case.

---

[2] We have no evidentiary indication that D'Ambrosio has fully exhausted administrative remedies as contemplated by Section 3582(c)(1)(A). See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, __ F. Supp. 3d __, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020). Courts are divided on whether Section 3582(c)(1)(A)'s exhaustion provision is a jurisdictional requirement that cannot be waived or forfeited by the government or whether it is a mandatory claim-processing provision subject to waiver and forfeiture. Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, __ F. Supp. 3d __, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer, No. 18-CR-00783-2, __ F. Supp. 3d __, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020) (same); United States v. Haney, No. 19-CR-541, __ F. Supp. 3d __, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No. 3:12-CR-00115-RCJ, __ F. Supp. 3d __, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441, __ F. Supp. 3d __, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same). Although not specifically raised by the parties, at least with respect to D'Ambrosio's family-circumstances claim, the court has a continuing obligation to consider questions of subject-matter jurisdiction *sua sponte*. See Fort Bend County v. Davis, 587 U.S. __, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)). However, we need not resolve the jurisdictional questions in this case. Assuming jurisdiction *arguendo*, D'Ambrosio has not established that a reduction in sentence under Section 3582(c)(1)(A)(i) is warranted. See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing, *inter alia*, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and holding that when a jurisdictional limitation "has a statutory provenance," rather than a constitutional one, courts may assume jurisdiction *arguendo*).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t). In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3] See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover." Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III). A defendant may also be eligible due to "death or incapacitation of the caregiver of the defendant's minor child" or incapacitation of the defendant's spouse or registered partner. Id. at cmt. n.1(C). The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above. Id. at cmt. n.1(D).

The BOP has developed internal criteria for addressing prisoner requests for compassionate release motions. The BOP's criteria contemplate early release

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act. See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)). We agree with those courts that have found that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling. Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

for certain terminally ill, severely debilitated, or elderly prisoners, none of which applies to D'Ambrosio. FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 4-7 (Jan. 17, 2019). They also consider death or incapacitation of the family-member caregiver of an inmate's child, id. at 7, again inapplicable to D'Ambrosio. The BOP also considers a host of other factors in its decision, including the nature of the offense, criminal history, amount of time served, supervised release violations, age at the time of offense, and disciplinary infractions. See id. at 12.

D'Ambrosio asserts that his family circumstances provide a compelling basis for compassionate release. He notes that his 13-year-old son, Anthony—who suffers from spastic diplegia[4]—resides with his biological mother, who is a registered nurse with greater risk of exposure to the COVID-19 virus. During the current pandemic, schools have been closed and Anthony's rehabilitative therapies have been "cancelled and/or compromised." (Doc. 725 at 10). D'Ambrosio contends that, if released, he could provide care for Anthony while his mother works.

We have little doubt that additional assistance with Anthony's care would be helpful and welcomed by his mother. But nothing in D'Ambrosio's *pro se* or

---

[4] "Spastic diplegia cerebral palsy is a form of cerebral palsy, a neurological condition that usually appears in infancy or early childhood, and permanently affects muscle control and coordination. Affected people have increased muscle tone which leads to spasticity (stiff or tight muscles and exaggerated reflexes) in the legs." *Spastic Diplegia Cerebral Palsy*, NATIONAL INSTITUTES FOR HEALTH, https://rarediseases.info.nih.gov/diseases/9637/spastic-diplegia-cerebral-palsy (last visited July 20, 2020).

7

counseled motions indicates that Anthony is unable to care for himself or that assistance from other family members is unavailable. These circumstances stand in sharp contrast to cases D'Ambrosio cites like United States v. Kataev, No. 16-CR-763-05, 2020 WL 1862685 (S.D.N.Y. Apr. 14, 2020). In Kataev, the defendant's wife was disabled and unable to care for their 10-year-old child, who suffered from cerebral palsy and periventricular leukomalacia and could not perform everyday tasks like eating and using the bathroom. See id. at *3. The child's grandparents were also unable to provide assistance. See id. The defendant's situation in Kataev, moreover, mirrored the specific scenario provided in Application Note 1(D) of Section 1B1.13 of the Guidelines. D'Ambrosio's family circumstances are much different and thus do not qualify as an "extraordinary and compelling" reason to warrant early release after serving only a quarter of his 120-month sentence.

D'Ambrosio—who is 39 years old—also asserts that his medical conditions and fear of contracting the COVID-19 virus in an institutionalized setting combine to establish extraordinary and compelling reasons to grant compassionate release. He states that he suffers from high blood pressure, high cholesterol, a hernia, and obesity, and that he is borderline diabetic. Of these conditions, the Centers for Disease Control and Prevention identify obesity as a factor that increases the "risk of severe illness from COVID-19" and high blood pressure as a factor that "might" increase that risk. See *Coronavirus Disease 2019 (COVID-19): At Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 20, 2020). We do not trivialize the seriousness of D'Ambrosio's health

conditions, but such ailments coupled with D'Ambrosio's present circumstances do not represent extraordinary and compelling reasons that would justify early release.

This is especially true because, as of this writing, the BOP reports that no inmates are currently positive for the COVID-19 virus at FCI Allenwood Low. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/ coronavirus/ (follow "Full breakdown and additional details" hyperlink) (last updated July 23, 2020, 3:00 p.m.). In fact, the *only* positive test results at the prison appear to be from two staff members: one who has tested positive and another who has since recovered. Id. These statistics render FCI Allenwood Low one of the lowest-risk facilities in the country for prisoners with health conditions like D'Ambrosio. See id.

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks. It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services. See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov /coronavirus/covid19_status.jsp (last visited July 22, 2020). Prisoner movement between facilities has generally been suspended with limited exceptions. Id. Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones. See id. The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)—recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—

to release certain vulnerable prisoners to home confinement.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.  The BOP reports that it has dramatically increased the use of home confinement and released 7,086 prisoners to such confinement over the past four months.  Id.

In sum, D'Ambrosio has not identified circumstances that rise to the level of "extraordinary and compelling" reasons for early release, even when all the factors proffered by D'Ambrosio are viewed together.  We thus find that he has failed to establish the first requirement for his compassionate release request.

**B.     Section 3553(a) Factors**

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors.[5]  See 18 U.S.C. § 3582(c)(1)(A).  D'Ambrosio has served approximately one-fourth of the 120-month sentence agreed upon by the government in exchange for dismissal of Count 1 and imposed by this court.  His projected release date, accounting for expected good-time credit, is March 21, 2026.

---

[5] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

The Section 3553(a) factors militate against reducing D'Ambrosio's sentence. We found at the time of sentencing, and reaffirm now, that a 120-month sentence reflects an appropriate balancing of various mitigating and aggravating considerations. D'Ambrosio was involved in a large-scale, interstate prostitution and drug conspiracy. He was also convicted of serious drug-trafficking offenses. We acknowledge that D'Ambrosio was fully compliant with his conditions of pretrial release and that he has demonstrated good conduct while serving his current sentence. Nevertheless, the Section 3553(a) factors squarely militate in favor of leaving D'Ambrosio's existing sentence unchanged.

### III.  Conclusion

For all of these reasons, the court will deny D'Ambrosio's motions (Docs. 716, 724) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Our denial will be without prejudice to D'Ambrosio's ability to refile the motion if, for example, D'Ambrosio experiences a serious deterioration of his physical health. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 24, 2020