IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:15-CR-3** |
| : | |
| v.  : | (Judge Neary) |
| : | |
| **ANTHONY F. D'AMBROSIO and** : | |
| **ARMANDO ENRIQUE DELGADO,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Defendants Anthony F. D'Ambrosio and Armando Enrique Delgado challenge the condition of their terms of supervised release requiring them to register under the Sex Offender Registration Act ("SORNA"), 35 U.S.C. § 20901, *et seq*. D'Ambrosio and Delgado, both convicted of transportation of an individual to engage in prostitution in violation of 18 U.S.C. § 2421(a), argue SORNA does not apply to them. After reviewing the parties' filings and the relevant law, the court finds D'Ambrosio falls under SORNA, but Delgado was never obliged to register. Accordingly, D'Ambrosio's motion will be denied and Delgado's will be granted.

**I.     Factual Background[1] and Procedural History**

At this point, the court assumes the parties' familiarity with the relevant facts and offers only a summary. Both D'Ambrosio and Delgado were convicted in jury trials of transportation of an individual to engage in prostitution in violation of 18 U.S.C. § 2421(a), conspiracy to transport an individual to engage in prostitution in

---

[1] Most of the facts will be taken from our court of appeals' decision in United States v. D'Ambrosio, 105 F.4th 533 (3d Cir. 2024).

violation of 18 U.S.C. § 371, and other drug charges. United States v. D'Ambrosio, 105 F.4th 533, 535 n.3 (3d Cir. 2024). From there, the defendants' paths diverged.

D'Ambrosio and the government agreed to a binding sentencing agreement wherein D'Ambrosio would serve a ten-year term of imprisonment followed by five years of supervised release and waive certain appeal rights. (Doc. 711). The agreement was "accepted in its entirety" by this court. (Doc. 801, 2/26/20 Sentencing Hr'g Tr. 31:21-32:3). While not contemplated by the written agreement, D'Ambrosio's counsel repeatedly conceded that SORNA applied to his client. (See id. at 14:11-13 ("I certainly recognize that this is a SORNA offense. . . ."); 14:25 ("[H]e is aware of that [sic] SORNA is a requirement."); 16:21-23 ("He's aware that [SORNA] applies by virtue of the conviction that the jury found for . . . Count 2 as well as Count 4.")). This court then asked if D'Ambrosio understood that he would be required to register under SORNA and D'Ambrosio responded "Yes sir." (Id. at 17:16-18:6).

Conversely, the government did not enter into a sentencing agreement with Delgado. And, at Delgado's sentencing, SORNA's applicability was anything but

certain. (Doc. 667, 7/23/19 Sentencing Hr'g Tr. 11:17-12:12).[2] Instead, this court delegated the decision on SORNA's applicability to the probation office. (Id.) Delgado attempted appealing immediately, but was turned away by our court of appeals because there was no evidence anyone from the probation office had required him to register under SORNA; so, at that time, neither the court nor probation imposed any registration condition as far as the Third Circuit could tell. U.S. v. Delgado, 827 F. App'x 180, 183-84 (3d Cir. 2020). After probation required him to register, Delgado filed a motion under 18 U.S.C. § 3583(e)(2) to modify his supervised release conditions—namely, to challenge his SORNA registration requirement. (Doc. 776).

At this point, D'Ambrosio's and Delgado's cases reconverged as the former also filed a Section 3583(e)(2) motion to modify his SORNA registration requirement. (Doc. 820). This court dismissed both motions, finding it lacked

---

[2] "THE COURT: . . . to clear up any confusion on the fourth condition I announced, and that is the compliance with the registration requirements of the Sex Offender Registration and Notification Act, that is a condition of supervision. To the extent compliance is required, neither the court, nor probation, nor counsel, none of us is frankly certain whether the Sex Offender Registration and Notification Act applies to the offense of conviction here or the offenses of conviction here, and that's a matter that we'll need to research. But, Mr. Delgado, you are advised that to the extent your conviction requires it, you are then, you will then be compelled to register pursuant to that enactment and in any state sex offender registration requirement in the location where you reside, work, or are a student or were convicted of a qualifying offense. So the bottom line is we need to further investigate whether your offenses of conviction are qualifying offenses, and frankly at this juncture we simply don't know, but that is a matter for probation to determine and you will obviously be apprised of any registration requirements when you begin to report to the probation office." (9/17/19 Sentencing Hr'g Tr. 11:17-12:12).

jurisdiction to modify supervised release based on a challenge to the legality of a condition imposed. (Docs. 858, 859). Our court of appeals reversed the dismissals, finding district courts do have jurisdiction to consider legal attacks to conditions of supervised release under Section 3583(e)(2). D'Ambrosio, 105 F.4th at 540. On remand, this court was tasked with addressing whether the law compels the defendants to register under SORNA. Id. at 540-41. After remand, this court ordered supplemental briefing in light of our court of appeals' decision. (Docs. 906, 907). The parties completed supplemental briefing, and this matter is now ripe for disposition.

## II.    Discussion

D'Ambrosio and Delgado both challenge the SORNA condition of their terms of supervised release under Section 3583(e)(2). That section provides that a district court may, after considering some of the factors set forth in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). Section 3583(e)(2) is not, however, "a substitute for an appeal," and a defendant may not use it to "belatedly rais[e] challenges to the original conditions of supervised release that were available at the time of his initial sentencing." D'Ambrosio, 105 F.4th at 539 (quoting United States v. McLeod, 972 F.3d 637, 643-44 (4th Cir. 2020)). Instead, defendants must properly exhaust all challenges to the legality of the condition, including by direct appeal, a motion pursuant to Federal Rule of Civil Procedure 35, or a 28 U.S.C. § 2255 petition. Id.

4

As to the merits of D'Ambrosio's and Delgado's arguments, the key question is whether they were convicted of a "sex offense" as set forth in 34 U.S.C. § 20911(5). The government is correct the analysis here is straightforward. (See Doc. 912 at 8). Included in the definition of sex offenses are all federal offenses under Chapter 117 of Title 18 of the U.S. code. 34 U.S.C. § 20911(5)(A)(iii). D'Ambrosio's and Delgado's convictions under 18 U.S.C. § 2421 fall within that classification. However, SORNA contains an exception whereby a conviction does not count as a "sex offense" if it, among other things, involved "consensual sexual conduct" of adults. 34 U.S.C. § 20911(5)(A)(C).

The next issue is how courts should analyze whether a conviction falls into the "consensual sexual conduct" exception. Both men prefer a categorical approach, looking only at the general elements of the crime itself rather than a defendant's particular conduct. (Doc. 911 at 6-7; Doc. 913 at 6-7). Conversely, the government prefers a fact-specific inquiry and cites to U.S. v. Rogers, 804 F.3d 1233 (7th Cir. 2015) for support. (Doc. 912 at 9-10). As explained by that court, the exception in Section 20911(5)(C) "uses fact-specific language, strongly suggesting that a conduct-based inquiry applies." Rogers, 804 F.3d at 1237. The Fifth Circuit applies the same analysis. See United States v. Gonzalez–Medina, 757 F.3d 425 (5th Cir. 2014). Rogers and Gonzalez-Medina are persuasive[3] that because Section

---

[3] Neither party, nor this court, has found any authority from our court of appeals regarding whether courts should use a categorical or fact-specific approach when evaluating the applicability of the consensual sexual conduct exception. Accordingly, the court turned to out-of-circuit precedent for guidance.

20911(5)(C) uses a broad, undefined term like "consensual sexual conduct," this language requires courts to conduct a circumstance-specific analysis rather than confine itself to categorical approaches based solely on the elements of a crime.

Having established the relevant principles of law, the analysis now turns to the specific facts of each man's case. Starting with D'Ambrosio, he forfeited his ability to challenge the SORNA registration requirement by failing to appeal the imposition of the registration requirement after his sentencing. He argues that any appeal in his case "would have been fruitless" and cites to United States v. Delgado, 827 F. App'x 180, 184 (3d Cir. 2020). (Doc. 913 at 6 n.4). He is mistaken.

The court, on the record, made quite clear that SORNA applied to D'Ambrosio's situation, and it appeared D'Ambrosio even agreed to this, or at the very least, did not object when he had the opportunity to do so. (See 2/26/20 Sentencing Hr'g Tr. 12:5-10; 17:16-18:6). The official judgment of the court also left no doubt as to the applicability of SORNA, stating "The defendant *must comply* with the registration requirements of . . . [SORNA]." (Doc. 714 at 6). Unquestionably, the court took care to make sure D'Ambrosio understood SORNA would apply. (See 2/26/20 Sentencing Hr'g Tr. 17:16-18:6). As such, the proper time to challenge the applicability of SORNA to his case was at the sentencing hearing, and after that, through a direct or collateral appeal. He failed to do so. Accordingly, D'Ambrosio cannot now seek to "use § 3583(e)(2) to gain review over issues which should have been raised in earlier proceedings." D'Ambrosio, 105 F.4th at 539 (quoting United States v. Nestor, 461 F. App'x 177, 179 (3d Cir. 2012)).

Even setting the issue of forfeiture aside, SORNA would still apply to D'Ambrosio. D'Ambrosio would only be exempted from SORNA's registration requirements if his offense dealt with "consensual sexual conduct." 34 U.S.C.A. § 20911(5)(C). Evidence offered at trial convinces the court D'Ambrosio used violence or otherwise coerced victims into engaging in the prostitution ring. For example, the ringleader of the prostitution ring testified he and D'Ambrosio would pretend to be police officers to scare other victims into joining their prostitution ring. (Doc. 456, 12/7/17 Trial Tr. 30:12-16). He also stated he and D'Ambrosio traveled to Rhode Island to smack a girl "a few times" to let her know she was not allowed to work outside of the prostitution ring. (Id. at 25:17-26:9). While D'Ambrosio objected to those statements' inclusion in his presentence report and denies they occurred, (Doc. 612 at ECF 7), there was no objection to the testimony at trial. His bare denials these events did not take place are unpersuasive. Rather, the court finds[4] D'Ambrosio used violence and intimidation when transporting victims across state lines to engage in prostitution. This in turn means the sexual conduct was not consensual and Section 20911(5)(C) would not apply to D'Ambrosio in any event.

Unlike D'Ambrosio, Delgado objected to the SORNA registration requirement at his sentencing hearing. D'Ambrosio, 105 F.4th at 535. In response,

---

[4] The imposition of a condition of supervised release, including SORNA registration, is left to the discretion of the district court. See United States v. Icker, 13 F.4th 321, 327 (3d Cir. 2021) (citing United States v. Loy, 237 F.3d 251, 256 (3d Cir. 2001)).

this court responded it was unsure if SORNA applied and delegated the task of finding out to probation. Id. From there, the record gets complicated.

According to Delgado, his probation officer required him to register under SORNA almost immediately after his July 23rd, 2019, sentencing. (Doc. 776 ¶ 5). Yet, when he appealed the issue, our court of appeals stated "[t]he record does not indicate whether the Probation Office, Bureau of Prisons, or a state agency later required Delgado to register as a sex offender. If any such determination was made, Delgado does not challenge that determination in this appeal." See Delgado 827 F. App'x at 184 n.3.

It is not clear why in his appeal, filed over a week after his probation officer required Delgado to register under SORNA, (see Doc. 646; Doc. 776 ¶ 5), no mention is made of this requirement. Delgado's current counsel acknowledges the appellate record did not indicate that Delgado was required to register, but offers no further explanation as to why the omission occurred (Doc. 915 at 3 n.1). Nevertheless, the government, even when asked explicitly to comment on whether Delgado forfeited his ability to challenge the requirement to register under SORNA, does not contend Delgado forfeited his challenge. (Doc. 917). Given the acquiescence of the government, and the surrounding ambiguity regarding SORNA's original application and the appeal that followed, this court will not cause Delgado's rights to be surrendered on a technicality. So, his challenge may continue.

With forfeiture off the table, the government argues Delgado's motion cannot be granted since he is no longer on supervised release. (See Doc. 912 at 5-6). True, Section 3583(e)(2) does provide for modifications of the terms of supervised release

8

"at any time *prior* to the expiration or termination of the term of supervised release." (emphasis added).

Yet, it is crucial to remember what the *specific* terms of Delgado's supervised release were. He was required to register with SORNA "as directed by the probation officer" and only "[t]o the extent that [his] offense of conviction qualif[ied] for such requirements." (Doc. 642 at 4, 6). There has never been a finding by this court, as was required by the Third Circuit, see United States v. Icker, 13 F.4th 321, 330 (3d Cir. 2021), that Delgado was convicted of a qualifying offense. Put another way, even if Section 3583(e)(2) bars Delgado from challenging the conditions of his supervised release, there has never been a proper order from this court requiring him to federally register under SORNA. Accordingly, Delgado should never have been under an obligation to federally register in the first instance, and there is no authority for this court to require him to do so now.

Moreover, Delgado first filed his motion to modify the conditions of his release on April 19th, 2021, (Doc. 776), well within his period of supervised release. And Delgado has been contesting the applicability of SORNA to his case since his sentencing in July of 2019. (See Doc. 667 at 11:16-12:21). It cannot be in accord with justice that Delgado is punished simply because the legal system moved slowly in adjudicating his request. Thus, to the extent necessary, this court finds it has the

authority to modify the conditions of Delgado's supervised release *nunc pro tunc* to April 19th, 2021. See Mitchell v. Overman, 103 U.S. 62, 64-65 (1880).[5]

As to the merits of Delgado's claim, the government points to five paragraphs from his pre-sentence investigation report in an attempt to establish non-consensual sexual conduct occurred, making Delgado a sex offender under SORNA. (Doc. 912 at 10-11). Of those, only one involves Delgado. (See id.) (The rest invoke only D'Ambrosio). That paragraph cites to two parts of trial testimony (one incorrectly, as Delgado points out). In both parts of the cited testimony, someone does say the ringleader came and stole money from the victims. (Doc. 443, 12/11/17 Trial Tr. 86:1-4, 151:16-20). And it is true that both times, there is testimony Delgado was present. (Id. at 86:6-16, 151:23-24). Yet, that is the extent to Delgado's involvement; he was just there. One witness even suggests Delgado was not present when the ringleader came to steal all the money. (See id. at 151:21-24). Thus, unlike D'Ambrosio, there is no testimony directly linking Delgado to using violence or other coercion in involving the victims in the prostitution ring. As such, the

---

[5] "[T]he rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or . . . of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up. In such cases, upon the maxim *actus curiae neminem gravabit*,—which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice,—it is the duty of the court to see that the parties shall not suffer by the delay. A *nunc pro tunc* order should be granted or refused, as justice may require in view of the circumstances of the particular case." Mitchell, 103 U.S. at 64-65.

government has failed to show Delgado's offense involved anything but consensual sexual conduct.

## III. Conclusion

For the reasons above, D'Ambrosio forfeited any challenge to registering under SORNA and the exception for consensual sexual conduct would not apply to him in any event. As such, his motion to modify the conditions of his supervised release is denied. Conversely, Delgado never forfeited such challenge and there has been no evidence shown that his offense involved anything other than consensual sexual conduct. Therefore, Delgado was never under an obligation to register under SORNA and, to the extent necessary, the court grants his motion to modify the conditions of his release *nunc pro tunc* to April 19th, 2021. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    August 12th, 2025